UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| BARD HUNTSMAN, | CASE NO. 5:07cv3638 |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| vs. | |
| PERRY LOCAL SCHOOLS BOARD OF EDUCATION, et al., | **MEMORANDUM OF OPINION AND ORDER** [Resolving Doc. 14] |
| Defendants. | |

This matter comes before the Court on Defendant's Motion to Dismiss the Complaint of Plaintiff, Bard Huntsman. (Doc. 14). Plaintiff, a former employee of the Perry Local Schools, has brought suit against the Perry Local Schools Board of Education ("Board") and Kenneth F. Hartwick, the Superintendent at the time of the events giving rise to Plaintiff's Complaint. The Court has been advised, having reviewed the Complaint; Defendants' Motion and the Response and Reply thereto; as well as applicable law. For the reasons set forth herein, Defendant's Motion is GRANTED.

**I.     Factual and Procedural History**

The facts allegedly giving rise to this action have found their way through various courts over the past several years. The Court finds that the procedural and factual history provided by the Fifth District Court of Appeals details the history of this matter, and quotes the same from that decision.[1]

> In the spring of 1997, school administrators with the Perry Local School District learned Huntsman, a junior high science teacher and basketball coach

---

[1] The Court recognizes that it is limited to a review of the pleadings when reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See* Fed. R. Civ. P. 12(d). However, a court may take judicial notice of proceedings in other courts of record. *See Rodic v. Thistledown Racing Club, Inc.*, 615 F.2d 736, 738 (6th Cir. 1980) (citing *Granader v. Public Bank*, 417 F.2d 75, 82-83 (6th Cir. 1969)); *see also Cleveland Indus. Square, Inc., v. White*, 52 F.3d 324 at *4 (6th Cir. 1995) (unpublished table decision).

with the District, had allegedly accessed inappropriate, sexually-oriented web sites on school computers, allowed students to access such sites, and viewed these sites with students. As a result of further investigation into Huntsman's conduct, the Board placed him on a leave of absence on April 15, 1997. At its May 16, 1997 meeting, the Board reviewed the evidence obtained during the investigation, and advised Huntsman it would conduct a suspension hearing on May 22, 1997. The Board passed a Resolution on May 22, 1997, suspending Huntsman without pay or benefits.

Throughout the summer of 1997, the Board discovered additional information about Huntsman's conduct which resulted in the Board's twice supplementing its original allegations at meetings held on August 12, 1997, and August 26, 1997. At these meetings, the Board resolved to continue Huntsman's suspension and pursue termination.

The parties agreed to the appointment of Lee Skidmore as Referee to hear the termination matter. The hearing was originally scheduled for July 24, 1997. After a series of cancellations, Huntsman's counsel sent a correspondence dated October 13, 1997, to the Referee, requesting the hearing be postponed. Via Order dated October 23, 1997, the Referee stayed the proceedings until such was reactivated at Huntsman's request.

On December 19, 1997, a Stark County jury found Huntsman guilty of one count gross sexual imposition, a felony of the fourth degree; four counts of disseminating matter harmful to juveniles, felonies of the fourth degree; and one count of disseminating matter harmful to juveniles, a felony of the fifth degree. On December 22, 1997, the trial court entered the convictions, and sentenced Huntsman to a period of incarceration of 5 1/2 years and ordered Huntsman to pay a fine of $ 5,000.00. Huntsman was subsequently transported to the Lorain Correctional Institution, where he remained until December 18, 1998.

On January 13, 1998, the Board voted to terminate Appellant. Huntsman's sister, who was designated his Power of Attorney, withdrew his contributions from the State Teachers Retirement System on January 26, 1998. The application for withdrawal from the account included a certification Huntsman was no longer teaching in an Ohio public school, was not under any contract or agreement to teach in the future, and was not on a leave of absence.

On February 11, 1998, the Ohio Department of Education ("ODE") sent Huntsman notice of the Ohio State Board of Education's ("State Board") resolution of intent to suspend, revoke or limit and to automatically suspend Huntsman's teaching certificate pursuant [to] [Ohio Rev. Code §] 3319.311. On February 24, 1998, pursuant to [Ohio Rev. Code] Chapter 119, Huntsman, through his former attorney, Anthony DioGuardi II ("DioGuardi"), requested, and was granted, a hearing. However, on July 27, 1999, Huntsman and the State Board entered into an agreement pursuant to which Huntsman's teaching

2

certificate was voluntarily suspended and the hearing was continued during the pendency of the appeal of his criminal convictions.

On December 8, 1998, this Court vacated Huntsman's convictions and remanded the matter to the Stark County Court of Common Pleas. [*State v. Huntsman*, 1998 Ohio App. LEXIS 6519 (Oh. Ct. App. 1998) (unreported)]. This Court vacated the convictions on statute of limitations grounds, finding "the trial court should have dismissed the counts pertaining to Brian Daniska, which allegedly occurred in 1983 through 1984, being the second count of the second indictment. However, we agree the acts alleged were part of a course of conduct culminating in sexual abuse of a juvenile, and for this reason, [. . .] the trial court properly refused to dismiss the other counts." *Id*. On January 7, 1999, DioGuardi advised ODE of the decision and proposed a continuation of the agreement between Huntsman and the State Board pending final disposition of the criminal matter.

Upon remand, on August 13, 1999, the Stark County Court of Common Pleas found Huntsman guilty of two counts of contributing to the unruliness or delinquency of a child, in violation of [Ohio Rev. Code §] 2919.14. On January 19, 2000, DioGuardi sent a letter to ODE indicating Huntsman's 1999 conviction was on appeal. After referencing his January 7, 1999 letter, he wrote: "Upon receipt of a decision, I will advise accordingly."

In September and October 2000, while Huntsman's appeal was pending, he attended two meetings of the Board and asked to go into executive session to inquire about his employment status. The Board declined to speak with Huntsman. On November 15, 2000, DioGuardi sent a letter to the Board on Huntsman's behalf, seeking information "whether or not there is any position available for [Huntsman] at this time."

Subsequently, on December 5, 2000, ODE sent a correspondence to Huntsman. In the letter, ODE refers to the July, 1998 Agreement between Huntsman and the State Board, then continues, "Our evidence indicates you violated that agreement in 2000 by seeking employment with Perry Local School District[.]"[] ODE advised Huntsman the State Board intended to suspend, revoke or limit his teaching certificates. Huntsman requested a hearing, which was originally scheduled for October 17-18, 2001, but was rescheduled until December 13-14, 2001, due to DioGuardi's having a prior commitment.

Huntsman attended another meeting of the Board on December 19, 2000, and again asked to go into executive session to inquire about his employment status. The Board denied Huntsman's request. In a correspondence dated January 3, 2001, the Board advised Huntsman Ohio law prohibited the school district from employing him. In a letter dated January 17, 2001, Huntsman asserted violations of his due process. In a response dated February 5, 2001, the Board again advised

3

Huntsman he was not employable under Ohio law, and asked Huntsman if he wanted to resume his termination hearing.

On September 26, 2001, the Ohio Supreme Court denied Huntsman's motion for reconsideration of the denial of his discretionary appeal, [*State v. Huntsman*, 755 N.E.2d 357 (Ohio 2001)], which exhausted Huntsman's appeals from his criminal conviction. By this time, DioGuardi was no longer representing Huntsman.

Huntsman obtained new counsel, William Steele ("Steele"), on October 6, 2001. On November 19, 2001, Steele sought a continuance of the December 13-14, 2001 hearing, which ODE opposed, and the Hearing Officer denied. Steele renewed his request for a continuance on December 6, 2001. That same day, ODE opposed the request. The Hearing Officer denied Huntsman's request and the hearing proceeded as scheduled.

Following the hearing, Huntsman filed a motion to dismiss, which the Hearing Officer denied. On April 9, 2002, the Hearing Officer issued a report and recommendation, finding Huntsman sexually abused two students, provided alcohol and sexually explicit books and movies to minors, allowed at least one student to view sexually-oriented websites on the school computer, and brutalized at least two students. The Hearing Officer concluded Huntsman's conduct was criminal, immoral and unbecoming to the position of a teacher under [Ohio Rev. Code §] 3319.31(B)(1), and recommended his permanent elementary teaching certificate be revoked.

After a May, 2002 meeting, the State Board remanded the case to the Hearing Officer for an opinion on whether the recommendation should extend to Huntsman's eight-year teaching certificate as well as his permanent certificate. On June 14, 2002, the Hearing Officer issued another report and recommendation, which found Huntsman and his attorney were aware the State Board was taking action relative to both of his teaching certificates, and which concluded Huntsman's eight-year certificate should also be revoked.

On July 9, 2002, the State Board adopted a Resolution revoking Huntsman's 1993 eight-year elementary certificate and his permanent teaching certificate. On August 7, 2002, Huntsman filed a Notice of Appeal pursuant to [Ohio Rev. Code §] 119.12 in the Stark County Court of Common Pleas. Via Judgment Entry filed June 5, 2003, the trial court affirmed the State Board's decision to revoke Huntsman's teaching certificates, finding said decision was supported by reliable, probative and substantial evidence and was in accordance with law. Huntsman filed a timely Notice of Appeal to this Court. We affirmed. [*Huntsman v. State Bd. of Educ.*, 2004 Ohio 3258 (Ohio Ct. App. 2004)].

On February 4, 2004, Huntsman filed a Complaint for Declaratory Judgment 1, seeking a final determination of his employment status. The

> Complaint also included causes of action in breach of contract and wrongful discharge. The Board filed a timely answer which included thirteen affirmative defenses. The parties entered into Stipulations of Fact, which were filed in the original action on December 24, 2002. On August 2, 2004, the Board filed a motion for summary judgment. Huntsman filed a memorandum in opposition thereto. The Board filed a reply brief. Via Judgment Entry filed October 18, 2004, the trial court granted summary judgment in favor of the Board, finding the Board substantially complied with [Ohio Rev. Code §] 3319.16 in its termination of Huntsman's contract.

*Huntsman v. Perry Local Sch. Dist. Bd. of Educ.*, 2005-Ohio-3294, 2005 Ohio App. LEXIS 3072, at ¶¶ 2-18 (Ohio Ct. App. 2005).

## II.     Legal Standard

The Court of Appeals for the Sixth Circuit addressed the standard for deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545 (6th Cir. 2007):

> The Supreme Court has recently clarified the law with respect to what a plaintiff must plead in order to survive a Rule 12(b)(6) motion. *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65 (citations and quotation marks omitted). Additionally, the Court emphasized that even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* (internal citation and quotation marks omitted). In so holding, the Court disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (recognizing "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"), characterizing that rule as one "best forgotten as an incomplete, negative gloss on an accepted pleading standard." Twombly, 127 S.Ct. at 1969.

*Id.* at 548.

If an allegation in the complaint is capable of more than one inference, the Court must construe it in the plaintiff's favor. *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109

(6th Cir. 1995).  The Court may not grant a Rule 12(b)(6) motion merely because it may not believe a plaintiff's factual allegations.  *Id*.  Although this is a liberal standard of review, the plaintiff still must do more than merely assert bare legal conclusions.  *Id*.  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff's complaint must allege either "direct or inferential" allegations regarding all of the material elements necessary to sustain recovery under "some" viable legal theory.  *Id.* (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)).

**III.** **Legal Analysis**

In his Complaint before this Court, filed November 23, 2007, Plaintiff pleads five causes of action.  The Court attempts to summarize those claims as follows, though Plaintiff's statutory basis for such claims is at times unclear, as is the party against whom he intends to assert his claims:

(1) Art. XIV, U.S. Constitution:  Due process violations, apparently asserted against both Defendants;

(2) 42 U.S.C.A. § 1983:  Violations of the Sixth and Fourteenth Amendments, apparently asserted against Defendant School Board;

(3) Due Process Violation:  Unspecified statutory basis, apparently asserted against Defendant School Board;

(4) 42 U.S.C.A. § 1983:  Deliberate indifference, asserted against Defendant Hartwick;

(5) Spoliation of Evidence:  Unspecified statutory basis, apparently asserted against Defendant School Board.

Regardless of Plaintiff's characterization of Counts One through Four, each arises under 42 U.S.C. § 1983.  Therefore, the Court will address them together.

Plaintiff does not present a specific prayer for relief. His only attempt at informing this Court of the relief he seeks is in the last paragraph of his Complaint, which is a continuation of the spoliation of evidence claim:

> As a direct, legal and proximate result of Defendant's violations of Plaintiff's due process rights, and [D]efendant School Board's negligent acts or omissions or intentional acts or omissions related to the destruction or the removal of Plaintiff's employment records, Plaintiff has been damaged and demands judgment against [D]efendants, in a sum which will fairly compensate Plaintiff for the injuries sustained.

Compl. at ¶ 50. The Court surmises that Plaintiff intends only to seek monetary damages for the wrongs allegedly committed by Defendants.

**A.      Claims arising under 42 U.S.C. § 1983**

Counts one through Four of Plaintiff's Complaint arise under 42 U.S.C. § 1983, which provides a cause of action to anyone who has been deprived of "rights, privileges or immunities" by a person acting "under color of any statute, ordinance, regulation, custom, or usage" of state law. *Id.* Plaintiff claims that the Board deprived him of his property interests in his employment, as well as in his personal items in his classroom, without a hearing. He further alleges that Hartwick acted intentionally to "destroy" Plaintiff without due process.

All of the events outlined by Plaintiff in the Complaint arose in 1997 when Plaintiff was suspended by the Board. Plaintiff's claims are clearly barred by the applicable statute of limitations period. "'[T]he appropriate statute of limitations for 42 U.S.C. § 1983 civil rights actions arising in Ohio . . . requires that actions . . . be filed within two years after their accrual.'" *LRL Properties v. Portage Metro Hous. Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995) (omissions in original) (citing *Browning v. Pendleton*, 869 F.2d 989, 992 (6th Cir. 1989) (en banc)); *see also Owens v. Okure*, 488 U.S. 235 (1989). In Ohio, the statute setting forth the relevant limitations period is Ohio Rev. Code § 2305.10, which states that a claim must be brought "within two years

7

after the cause of action accrues." *Id.* The cause of action accrues "when the injury or loss to person or property occurs." *Id.* Under no possible interpretation of the facts could Plaintiff be said to be within the statute of limitations period.

Plaintiff attempts to argue that claims under § 1983 for deprivation of a property interest without due process are only available to a plaintiff when state law remedies are inadequate, in support of which he references *Parratt v. Taylor*, 451 U.S. 527, 544 (1981). He claims that he did not know there would be no remedy at state law until the final denial of his petition for a writ of certiorari before the Supreme Court of Ohio. Plaintiff apparently mistakenly applies an exhaustion requirement to § 1983 claims. There is no merit to his argument, and any claim under § 1983 should have been brought within the two-year statute of limitations period.

Furthermore, while the Court has already found that the statute of limitations bars Plaintiff's action, it would also note that Plaintiff's underlying claims are entirely meritless. Plaintiff's conduct resulted in a criminal conviction such that he was unemployable by the Board, which would have acted in contravention of state law had it attempted to re-hire him. To hold a hearing regarding Plaintiff's termination would have been a vain and fruitless act. The Board informed Plaintiff of that fact. Plaintiff nevertheless continually pursued the Board, both at their meetings and by means of repeated litigation. Persistence does not legitimize an otherwise invalid claim.

Finally, the state courts have made a final decision regarding Plaintiff's claims after Plaintiff pursued his appeals and requests for reconsideration. The state courts found the claims to be without merit. The doctrine of res judicata precludes this Court's deciding any differently, even if the statute of limitations did not bar Plaintiff's claims.

B.   **Spoliation of Evidence**

Plaintiff's final claim is that evidence that would have provided support for his civil claims was destroyed or secreted by Defendants, either negligently or intentionally. He believes that this supports a claim for spoliation of evidence.

The Sixth Circuit has noted that, under Ohio law, a spoliation of evidence claim requires proof of the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts[.]" *Davison v. Cole Sewell Corp.*, 231 Fed.Appx. 444, 451 (6th Cir. 2007) (citing *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037, 1038 (Ohio 1993)). "The rules that apply to the spoiling of evidence and the range of appropriate sanctions are defined by state law[.]" *Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999) (citing *Welsh v. United States*, 844 F.2d 1239, 1245 (6th Cir.1988)).

The Court has already ruled that all of Plaintiff's claims under § 1983 are barred by Ohio's two-year statute of limitations. Even if Plaintiff were able to make out a claim for spoliation of the evidence required to support his § 1983 claims, he would be unable to demonstrate that he has been damaged because, by his own inaction, those claims are time-barred.[2]  Therefore, his spoliation claim must likewise fail.

IV.   **Conclusion**

Plaintiff's claims under 42 U.S.C. § 1983 fail on the basis of the statute of limitations, which can in no wise be said not to have run in this case. His spoliation of evidence claim also

---

[2] The Court notes that Defendants have also argued that they are protected from Plaintiff's spoliation of evidence claim by the doctrine of qualified immunity. The Court acknowledges Defendants' argument but reserves judgment, as no reasonable argument can be made that Plaintiff has been damaged, given the statute of limitations.

fails, as there is no way for him to prove that he was damaged by any alleged destruction of evidence, even if it were assumed to have happened. For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED, and Plaintiff's Complaint is DISMISSED.

    IT IS SO ORDERED.

DATED: August 19, 2008                      */s/ John R. Adams*
                                                Judge John R. Adams
                                                UNITED STATES DISTRICT COURT